UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BOARDS OF TRUSTEES OF OHIO
LABORERS' FRINGE BENEFIT
PROGRAMS,

      Plaintiff,

      v.

Civil Action 2:10-cv-00657
Magistrate Judge E.A. Preston Deavers

SAVCON, INC., *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion for Summary Judgment Against Remaining Defendant, James Severino. (ECF No. 37.) For the reasons that follow, Plaintiffs' Motion is **GRANTED**.

### I. BACKGROUND

Plaintiffs are composed of the Boards of Trustees for the Ohio Laborers' Fringe Benefit Programs ("Boards of Trustees"). The Boards of Trustees is an association consisting of three employment benefit trusts[1] and one labor management cooperation trust.[2] (Compl. ¶ 2, ECF No. 1.) The Board of Trustees oversees the collection of fringe benefit contributions to each of these plans. (Archer Aff. ¶ 1, ECF No. 19-2.) Plaintiffs are also obligated to collect contributions to

---

[1] The three employment benefit plans are Ohio Laborers' District Council-Ohio Contractors' Association Insurance Fund, Laborers' District Council and Contractors' Pension Fund of Ohio, and Ohio Laborers' Training and Apprenticeship Trust Fund.

[2] The labor management cooperative trust is Ohio Laborers' District Council–Ohio's Contractors Association Cooperation and Education Fund.

the LIUNA Tri-Funds, which consists of three national Labor-Management cooperative trusts. (Compl. ¶ 2, ECF No. 1; Archer Aff. ¶ 2, ECF No. 19-2.)

Plaintiffs brought this action against Defendant Savcon, Inc. ("Savcon") and James Severino ("Severino") pursuant to Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and Section 502 of the Employees Retirement Income Act ("ERISA"), 29 U.S.C. § 1132, *et seq.* Plaintiffs sought to hold Defendants jointly and severally liable for late and unpaid fringe benefit contributions. On July, 5, 2011, the Court granted Plaintiffs' Motion for Summary Judgment against Defendant Savcon, finding that Savcon failed to pay contributions and made late contributions required pursuant to a collective bargaining agreement.[3] (Opinion & Order, ECF No. 21.)

Plaintiffs now move for summary judgment against Defendant Severino as an individual. Plaintiffs have provided evidence in support of their Motion including the deposition testimony of James Severino, Jr., Defendant Severino's son and employee of Savcon. Within their Motion, Plaintiffs specifically maintain that Defendant Severino, an officer and partial owner of Savcon, continued to operate, and conduct new business for Savcon, after the Ohio Secretary of State canceled Savcon's corporate charter. Plaintiffs assert that because the late and unpaid contributions in this action occurred after the cancellation of Savcon's corporate charter, Defendant Severino is an employer subject to liability under ERISA.

On December 21, 2011, after Defendant Severino's briefing time had run, the Court directed Defendant to move for leave to respond *instanter* within seven days, if he wished to file a response to Plaintiffs' Motion for Summary Judgment. The Court cautioned Defendant

---

[3] Plaintiffs incorporate their prior Motion for Summary Judgment, as well as the evidence in support there of, into their current Motion.

2

Severino that if he failed to act the Court would consider Plaintiffs' Motion as unopposed. As of the date of this Opinion and Order, Defendant Severino has not taken any action with regard to Plaintiffs' Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is

appropriate." *Stanberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

**A.     Personal Liability of Defendant Severino**

The central issue Plaintiffs' Motion for Summary Judgment raises is whether Defendant Severino is an employer obligated to make contributions under ERISA. Ultimately, the Court finds the uncontested evidence sufficient to establish that Defendant is an employer obligated to make contributions within the meaning of ERISA.

Pursuant to ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."[4] 29 U.S.C. § 1145. ERISA defines the term employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5); *see also Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 575 (2nd Cir. 1995) (concluding that the phrase "in the interest of employer" within 29 U.S.C. 1002(5) clearly encompassed "those who act for an employer or directly assume the employer's duty to make plan contributions"). The term person "means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

This Court has held that an officer of an Ohio corporation who carried on new business following the cancellation of a corporation's charter was an employer within the meaning of

---

[4] Plaintiffs have the right to enforce this provision through a civil action pursuant to 29 U.S.C. § 1132(a)(3).

ERISA. *Shaw v. Jenkins*, 159 F.Supp.2d 995, 1000–01 (S.D. Ohio 2001); *see also Orrand v. Kin Contractors, LLC*, No. 2:09 CV 1129, 2011 WL 1238301, at *5 (S.D. Ohio March 30, 2011) (holding that the corporate entity did not shield an individual from liability under ERISA who did business under the name of a former limited liability company). In so holding, the Court found Ohio corporate law persuasive in deciding whether the individual officer met the definition of employer under ERISA. *Shaw*, 159 F. Supp. 2d at 999–1000.

> Ohio law specifically provides:
>
> When a corporation is dissolved voluntarily, *when the articles of a corporation have been canceled*, or when the period of existence of the corporation specified in its articles has expired, *the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs*, or to obtain reinstatement of the articles in accordance with section 1701.07, 1701.921, 1785.06, or 5733.22 of the Revised Code, or are permitted upon reinstatement by division (C) of section 1701.922 of the Revised Code, and for such purposes it shall continue as a corporation.

Ohio Rev. Code § 1701.88(A) (emphasis added). "Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs." *Chatman v. Day*, 7 Ohio App. 3d 281, 282 (Ohio Ct. App. 1983). "[A] corporation that has had its articles of incorporation cancelled does not cease to exist, but instead remains a *de jure* corporation for the limited purpose of winding up its affairs or obtaining reinstatement of its articles of incorporation." *Thomas v. Price*, 133 Ohio App. 3d 585, 589 (Ohio Ct. App. 1999).

As one Ohio Appellate Court has noted, "[t]he firm proscription in [Ohio Rev. Code § 1701.88(A)] . . . indicates an intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business under the name of a dead, defunct and possibly insolvent corporation."

5

*Chatman*, 7 Ohio App. 3d at 282. Accordingly, various Ohio Courts, as well as this Court, have concluded that "officers or principals who carry out new business that is not for the purpose of winding up the corporation can be held personally liable for the new obligations they incur." *J.J.O. Constr., Inc. v. Baljak*, No. 06AP-1300, 2007 WL 2309741, at *5 (Ohio App. Ct. Aug. 14, 2007) (citing *Nabakowski v. 5400 Corp.*, 29 Ohio App. 3d 82, 85–86 (Ohio App. Ct. 1986); *Chatman*, 7 Ohio App. 3d at 283–84); *Shaw*, 159 F.Supp.2d at 1001 ("[T]he officers of the corporation who carry on new business do so as individuals . . . and are personally responsible for such obligations as they incur.") (internal quotations omitted).

In this case, the uncontested evidence demonstrates that Defendant Severino continued doing business under the name Savcon after the corporation's cancellation and assumed the obligation to make fringe benefit contributions. Defendant Severino and his wife, Diane Severino, formed Savcon to enable them to bid on union projects. Defendant Severino was a 49% shareholder of Savcon and either the vice president or president of the corporation. (Dep. Severino 4–5, 7, 16, ECF No. 37-6.) The deposition testimony reflects that Defendant Severino ran the company with the help of his wife and son, but had ultimate control and authority over business decisions including whether fringe benefit contributions were paid. (*Id.* at 4, 11, 17–18.)

In September 2005, Savcon executed an Ohio Heavy-Municipal-Utility State Construction Agreement (the "Agreement") with local unions affiliated with the Laborers' District Council of Ohio, AFL-CIO. (Archer Aff. ¶ 11, ECF No. 19-2; Ex. A, ECF No. 19-3.) By entering the Agreement, Savcon adopted and accepted the terms and conditions of employment contained in the Ohio Highway-Heavy-Municipal and Utility Construction State Agreement. (Ex. A, ECF No. 19-3.) Based on these terms and conditions, the Agreement binds

6

Savcon to the Declaration of Trusts, which establishes each of the trust funds that form Plaintiffs' association as well as the LIUNA Tri-Funds. (Archer Aff. ¶ 11, ECF No. 19-2; Ex. B, ECF No. 19-3.) The Agreement obligates Savcon to make fringe benefit contributions to the respective funds on behalf of all its employees within the relevant jurisdiction. (*Id.*) The Agreement also provides for liquidated damages of 10%, plus 1% interest per month, for late contributions. (Archer Aff. ¶ 14, ECF No. 19-2; Ex. B, ECF No. 19-3.) The Agreement provides that it remains in full force and effect until one of the parties terminates it through written notice. (Ex. A, ECF No. 19-3.)

On May 8, 2009, the Ohio Secretary of State cancelled Savcon's Articles of Incorporation and Certificate of Authority.[5] Despite this cancellation, however, Defendant Severino continued to conduct normal business through Savcon beyond the process of winding up its affairs. Specifically, from May 2009 through 2010, Defendant Severino made no changes to the operations of Savcon and continued operating and working on projects. (Dep. Severino 7–8, 15, ECF No. 37-6.) Finally, the evidence reflects that although Defendant Severino, under the name Savcon, made some fringe benefit payments after May 2009, from April 2010 until February 2011 he failed to make contributions and made several late payments. (Archer Aff. ¶¶ 12, 14, ECF No. 19-2; Ex. E, ECF No. 37-4.)

Given these circumstances and the uncontested evidence, the Court finds that Defendant Severino was an employer who was obligated to make contributions under ERISA. Specifically, the evidence demonstrates that Defendant Severino assumed the obligation of Savcon, and the terms of the 2005 Agreement, as he continued to operate Savcon without change following

---

[5] The Ohio Secretary of State informed Defendant Severino's wife, who was Savcon's statutory agent, through letter of the cancellation. (ECF No. 37-3.)

cancellation of the corporate charter and made some, albeit insufficient, fringe benefit contributions pursuant to the Agreement. The evidence further indicates that following the corporation's cancellation Defendant Severino continued to conduct projects under the name of Savcon and made no attempt to wind up the corporation's affairs. Accordingly, because the undisputed evidence demonstrates that Savcon and Defendant Severino both failed to make and made late contributions, Plaintiffs are entitled to judgment as a matter of law.

**B.     Damages**

ERISA establishes a series of mandatory damages for unpaid contributions. *See* 29 U.S.C. § 1132(g)(2). Specifically, ERISA provides:

> (2)     In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> > (A)     the unpaid contributions
> >
> > (B)     interest on the unpaid contributions
> >
> > (C)     an amount equal to the greater of
> >
> > > (i)     interest on the unpaid contributions, or
> > >
> > > (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> >
> > (D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and . . . .

*Id.* For the purposes of § 1132(g)(2), the Court calculates interest on unpaid contributions based on the rate provided under the plan. *Id.*

Unlike unpaid contributions, § 1132(g)(2) does not provide for liquidated damages based on untimely-paid contributions. Nevertheless, 29 U.S.C. § 185 allows Plaintiffs to recover such

damages for untimely paid contributions under the terms of a collective bargaining agreement. 29 U.S.C. § 185; *Bd of Trs. of Ohio Laborers' Fringe Ben. Programs v. Carson Paving Co.*, No. 2: 05-CV-1120, 2007 WL 852129, at *3 (S.D. Ohio Mar. 16, 2007) (citing *Anderson v. AT & T Corp.*, 147 F.3d 467, 473 (6th Cir. 1998)). Accordingly, as this Court noted in a similar case:

> Liquidated damages relating to the untimely payment of contributions not recoverable under § 1132(g)(2) may be recovered pursuant to the CBA if the liquidated damages provision does not constitute a penalty under federal common law. *See* [*Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers*], Inc., 933 F.2d 376, 390 (6th Cir. 1991)]. In this regard, the Court must consider whether the harm caused by a breach of the CBA would be difficult or impossible to estimate, and whether the amount fixed in the liquidated damages provision of the agreement represents a reasonable forecast of just compensation for the harm caused. *United Order of Am. Bricklayers and Stone Mason Unions No. 21 v. Thorleif Larson & Son, Inc.*, 519 F.2d 331, 332 (7th Cir. 1995). *See also Bricklayers Pension Trust Fund v. Rosati, Inc.*, 187 F.3d 634 (table decision), No. 98-1552, 1999 WL 503501, at *2 (6th Cir. July 7, 1999).

*Carson Paving Co.*, 2007 WL 852129, at *3.

Here, the relevant collective bargaining agreement provides that "[i]f contributions are not received [in a timely fashion], the Contractors will be subjected to and agree to pay liquidated damages of ten percent (10%) plus one percent (1%) per month for each month the Contractor is delinquent . . . ." (Ex. B, ECF No. 19-3.) Mr. Archer's uncontested testimony indicates that the damage charge and interest rate are generally related to the losses Plaintiff sustains due to late payment. (Archer Aff. ¶¶ 15–16, ECF No. 19-2.) The Court concludes that this provision does not constitute an unenforceable penalty. *See Carson Paving Co.*, 2007 WL 852129, at *3 (holding the same).

In this case, the undisputed evidence reflects that Defendants still owe Plaintiffs $10,876.68 in unpaid contributions. (Ex. E., ECF No. 37-4.) Furthermore, applying the calculations outlined above to Defendants unpaid and untimely paid contributions, the liquidated

9

damages and interest due total $4,391.08.  (*Id.*)  Accordingly, Plaintiffs are entitled to $15,267.76 in damages, plus interest from the date of judgment at a rate of 1% per month.

Additionally, pursuant to § 1132(g)(2), Plaintiff are entitled to the costs of this action as well as attorney's fees.  In granting Plaintiffs' original Motion for Summary Judgment, the Court found that Plaintiffs were entitled to $3,035.00 in costs and attorneys fees.  Plaintiffs' counsel has submitted evidence that since that time he has worked 9.75 hours at a rate of $230 per hour for a total of $2,242.50.  The Court finds these hours and rates to be reasonable given the circumstances of this case.  Accordingly, Plaintiffs are entitled to $5,277.50 in costs and attorney's fees.

## IV.  CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment Against Remaining Defendant James Severino is **GRANTED**.  (ECF No. 37.)  Defendant Severino is jointly and severally liable to Plaintiffs, with Defendant Savcon, Inc., for **$15,267.76** in damages, plus interest from the date of judgment at a rate of 1% per month, as well as costs of this action and attorney's fees in the amount of **$3,035.00**.  Additionally, Defendant Severino is liable to Plaintiffs in the amount of **$2,242.50** in costs and attorneys fees incurred after judgment against Defendant Savcon, Inc.

The clerk is **DIRECTED** to enter **JUDGMENT** against Defendant James Severino and remove this case from the Court's pending case list.

**IT IS SO ORDERED.**

Date: February 29, 2012                                          /s/ *Elizabeth A. Preston Deavers*
                                                                             Elizabeth A. Preston Deavers
                                                                             United States Magistrate Judge

10